**Billy Ray CARTER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S00–8601–CR–087.

Supreme Court of Indiana.

April 7, 1987.

Aaron E. Haith, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Billy Ray Carter was charged with robbery while armed with a deadly weapon, a class B felony, theft, and with being a habitual offender. He was tried by jury in the Marion Superior Court, Criminal Division, Room 3. The jury returned a verdict of guilty of robbery, class C felony, and not guilty of theft. A new jury was impanelled at a later time, and that jury found Appellant to be a habitual offender. The trial court sentenced Appellant to five years on the robbery conviction, enhanced by thirty (30) years for the finding of habitual offender for a total term of thirty-five (35) years imprisonment.

Four issues are presented for our consideration in this direct appeal:

1. error in admitting into evidence State's Exhibit 1–A, a knife;

2. denial of cross-examination of a State's witness;

3. insufficiency of the evidence; and

4. impanelling of a new jury to hear the habitual offender stage of the trial.

Appellant and victim Wanda Yano had been friends for some time prior to the incident in question. On March 9, 1985, Appellant and his cousin, Rodney Evans, were at Yano's apartment. Apparently Appellant and Yano were to go out for dinner with another friend later that evening. Yano noticed Appellant had a large knife with a pearl handle in a holster strapped to his leg. She observed Appellant showing the knife to Evans. Suddenly, Appellant grabbed Yano, putting his hand over her mouth, and, with the help of Evans, dragged Yano to a bed. He threatened to kill her if she screamed. They laid her down on a bed and co-defendant Evans took Yano's money from her right front pocket. She testified she had six-hundred and seventy ($670) dollars in the pocket and was saving it to buy an automobile. After the money was taken from her, Yano locked herself in the bathroom. About fifteen minutes later Appellant and Evans told Yano they were going to borrow her car and would return it later. She saw them drive away in her automobile. She later called the police and reported she had been robbed. Yano testified she had calls from Appellant in which he promised to return her money if she would drop the charges against him. Other witnesses testified that Yano had made various statements, including the fact that she would like to drop the charges but was afraid of being charged with perjury by the Prosecutor. Although she claimed she had no romantic involvement with Appellant, other friends testified they were romantically involved and that Yano became upset with Appellant when she found he was involved with another woman.

I

Police Detective Rynard found, in Appellant's automobile, a knife which was marked during trial as State's Exhibit 1–A. At trial Yano testified she saw Appellant show Evans a knife and that the knife was strapped to Appellant's leg during the robbery. When shown State's Exhibit 1–A, Yano testified it looked like the knife she had seen in Appellant's possession, but was not exactly the same. She said the blade looked the same as the knife she had seen on Appellant, but the handle of that knife was a pearl handle and the knife marked State's Exhibit 1–A was not. Over Appellant's objections, the trial court admitted the knife into evidence for demonstrative purposes only. Appellant later testified he neither kept nor carried a knife in his vehicle nor on his person. He denied ever having seen State's Exhibit 1–A. Officer Rynard testified he found State's Exhibit 1–A in Appellant's automobile. The trial court admitted State's Exhibit 1–A for substantive purposes of impeachment.

■ Appellant claims the admission of State's Exhibit 1–A was improper in that it was irrelevant to the cause and served only

to inflame the jury. The State contends admission was proper for impeachment purposes and the trial court was acting within its discretion to permit the knife into evidence as demonstrative evidence. Although we fail to see the value of this exhibit as demonstrative evidence inasmuch as the victim stated it was not the knife she saw on Appellant in her apartment since it did not have a pearl handle, we further observe that its admission was harmless error. The victim testified that Appellant had a knife in his possession at the time of the robbery. The police officer testified that this knife was found in Appellant's automobile. Showing State's Exhibit 1–A, the knife, to the jury, together with the candid testimony of both witnesses, cannot be presumed to have prejudiced this jury in light of all the other direct testimony involving Appellant in the robbery. Further, prejudice cannot be presumed particularly in view of the fact that the jury found Appellant guilty of robbery, class C felony, and not the original charge of robbery while armed with a deadly weapon, class B felony. We therefore find no grounds for reversal on this issue.

## II

Appellant next argues the trial court erred in refusing to allow Yano to be cross-examined regarding her employment. Specifically, the trial court sustained the State's objection to the question, "[W]hat is a relaxation center?" The court had earlier held, on the State's motion *in limine*, that Yano could be questioned as to where she worked, but could not be questioned in detail regarding her duties at her place of employment.

The trial judge has discretion to determine the scope of cross-examination and only a clear abuse of that discretion warrants reversal. *Blankenship v. State* (1984), Ind., 462 N.E.2d 1311, 1313–14. To show an abuse of discretion by the trial judge in controlling the scope of cross-examination, Appellant must show how he was prejudiced by the trial judge's actions. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1107. We have held, and Appellant

agrees, that prostitution is not an impeachable offense. *Ashton v. Anderson* (1972), 258 Ind. 51, 62–63, 279 N.E.2d 210, 216–17. The only possible reason for Appellant's line of questioning was to prejudice Yano in the eyes of the jury. Thus, the trial judge did not abuse his discretion in refusing to allow specific questions relating to Yano's employment.

## III

Appellant argues the evidence was insufficient to support his conviction. He claims Yano's testimony was so inherently improbable and incredible that it should be disregarded. His explanation is that Yano brought the charges against him falsely to seek revenge because of Appellant's interest in another woman.

The standard for insufficiency is that we will not reweigh the evidence nor judge the credibility of witnesses, but will look only to the evidence most favorable to the prevailing party, and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which the jury could reasonably infer the defendant's guilt beyond a reasonable doubt, we will affirm the conviction. *Linder v. State* (1985), Ind., 485 N.E.2d 73, 78; *Pyle v. State* (1985), Ind., 476 N.E.2d 124, 126. The evidence shows that Appellant, while wearing a knife, placed his hand over Yano's mouth, dragged her to a bed, and threatened to kill her if she screamed. Evans removed six-hundred and seventy ($670.00) dollars from Yano's pants pocket. Appellant and Evans then left in Yano's car. Although there was much conflict in the testimony presented to the jury, there was sufficient evidence to support the conviction.

## IV

Appellant claims his trial by a new jury on the habitual offender count was reversible error. The record shows Appellant made no objection to either the dismissal of the original jury or the impanelling of a new jury to try the habitual offender count at a later time. A party must raise a proper objection at trial to preserve error

for appellate review. *Beland v. State* (1985), Ind., 476 N.E.2d 843, 845. Failure to complain of an alleged error at trial in a timely fashion is a waiver. *Neaveill v. State* (1985), Ind., 474 N.E.2d 1045, 1050.

Appellant was found guilty of robbery on August 2, 1985, at 1:50 a.m. The next time the trial judge had available to hear the habitual offender count was September 26, 1985. The jury was then excused and Appellant's trial was set for September 26. Later, the trial judge moved the trial on the habitual offender count to August 22, 1985. On August 21, 1985, one day before the trial, Appellant filed a written objection to the second jury for the habitual offender phase of his trial based on the mandate of Ind.Code § 35–50–2–8(c) that the same jury be reconvened for the sentencing hearing.

 We have previously authorized the impanelling of a new jury to hear the habitual offender phase when necessity requires it. In *State v. McMillan* (1980), 274 Ind. 167, 176, 409 N.E.2d 612, 618, *cert. denied,* (1981) 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207, *aff'd.* (1983) 450 N.E.2d 996, we held it was in the public interest that the State be given another opportunity to secure an enhanced penalty should the first attempt result in a deadlocked jury. In *Funk v. State* (1981), Ind., 427 N.E.2d 1081, the defendant was retried on an habitual offender count in front of a new jury after a mistrial was declared during the first proceeding. We stated:

> In the instant case, the mistrial was not the result of a deadlocked jury but for other reasons. We see no reason for a different rule no matter what the cause of the mistrial. We therefore hold there was no error in overruling Appellant's objection to being retried on the habitual offender count in front of a new jury impanelled solely for that purpose.

*Funk,* 427 N.E.2d at 1089. In the most recent case, *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, defendant was found guilty of theft. The trial judge found it impossible to determine whether the conviction should be a class D felony or a class A misdemeanor so he ordered a presentence investigation and a hearing. Thereafter, the trial court entered judgment on the conviction as a class D felony. When the original jury was reconvened to hear the habitual offender charge, some members stated they had seen publicity concerning the verdict and claimed they could not be impartial toward the defendant. As a result, the trial judge discharged the jury and commenced the process of selecting a new jury to hear the habitual offender charge over the defendant's objection. In finding no error in that procedure, we held:

> ... § 35–50–2–8(c) does not preclude a different jury from determining the habitual offender charge. A trial on the habitual offender charge involves an issue of fact which is separate from the issues involved in the trial on their underlying felony due to the bifurcated nature of the proceeding as a whole. A new jury is qualified to make the determinations necessary for a finding as to the habitual criminal status. *Funk v. State* (1981), Ind., 427 N.E.2d 1081; *State v. McMillan* (1980), Ind. [274 Ind. 167], 409 N.E.2d 612. The trial court therefore did not err in providing that the defendant be tried by a new jury on the habitual offender count.

*Kalady,* 462 N.E.2d at 1306. Here, when the jury arrived at a verdict very early in the morning, the trial judge found his calendar did not allow a trial on the habitual offender phase for several weeks. No objection was made by any of the parties to setting this for trial at a later time and before a new jury. We fail to see any due process violation claimed by Appellant that merits reversal on this issue.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.