Travis WADE, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9806–CR–538.

Court of Appeals of Indiana.

Nov. 5, 1999.

Rehearing Denied Dec. 14, 1999.

by res judicata. Clearly, the current litigation regarding visitation is also barred by res judicata.

Ann M. Skinner,[1] Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Defendant–Appellant, Travis Wade (Wade); appeals his conviction for Robbery, a Class B felony, Ind.Code § 35–42–5–1, and two counts of confinement, Class B felonies, Ind.Code § 35–42–3–3. Wade is hereby denied.

1. Counsel for the Appellant filed a Petition To Withdraw As Counsel on August 9, 1999. It

also appeals the trial court finding him to be a habitual offender pursuant to Ind. Code § 35–50–2–8.

We affirm.

## ISSUES

Wade presents three issues for our review, which we restate as follows:

1. Whether Wade's due process rights were violated when the State failed to preserve his vehicle as evidence.

2. Whether the photo array shown to the identifying witness was unduly suggestive and whether the in-court identification was improper.

3. Whether the habitual offender statute was violated when the original jury was released and whether there was sufficient evidence to find that Wade violated the habitual offender statute.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Wade's convictions are as follows. On December 16, 1995, Wade entered the Indianapolis Treatment Center, a center which dispenses methadone to the chemically dependent, and stood in line. Upon reaching the front of the line he placed a note demanding money on the counter and drew a gun. He then kicked open a door, gaining entrance to the interior offices. Inside, Wade pointed a gun at nurse Amy Stephens and ordered her to fill a pillow case with the center's money. He threatened to shoot her if she did not comply. Wade then kicked open a door to counselor Wayne Rainey's (Rainey) office, pointed his gun at Rainey's face and demanded to be let out a side door. He then jumped in a four-door sedan and was driven across the parking lot to another car. Rainey walked out of the building and saw Wade drive off in a black Camaro.

Wade was arrested on January 17, 1996, while driving his black Camaro and the car was impounded. He was charged with robbery, a Class B felony, Ind.Code § 35–42–5–1, two counts of criminal confinement, Class B felonies, Ind.Code § 35–42–3–3, and carrying a handgun without a

license, a Class A misdemeanor. He was also separately charged with carrying a handgun without a license as a Class C felony. Finally, he was charged on a separate page with being an habitual offender. Ind.Code § 35–50–28.

On March 2, 1998, he was tried on the charges of robbery, two counts of criminal confinement, and carrying a handgun without a license. He was convicted of robbery, a Class B felony, and two counts of criminal confinement, Class B felonies. He was acquitted of carrying a handgun without a license, a Class A misdemeanor, and subsequently the Class C felony enhancement was dismissed. On April 28, 1998, a new jury tried him for the habitual offender charge and found him to be an habitual offender.

Wade was sentenced to twenty years on the robbery conviction which was enhanced by thirty years due to his habitual offender status. He was sentenced to twenty years on one of the confinement convictions, to run concurrently with the robbery. He was sentenced to ten years on the other confinement conviction, to run consecutive to the robbery. Wade's total sentence was sixty years.

## DISCUSSION AND DECISION

### I. Failure to Preserve Evidence

Wade asserts that his due process rights were violated because the State failed to preserve his vehicle, which he claims was potentially exculpatory evidence. On January 17, 1996, Wade was arrested while in his vehicle, a black Camaro, and the car was impounded. The vehicle was subject to forfeiture proceedings which were initiated on September 3, 1996. A default judgment was entered against Wade in the forfeiture proceeding on February 6, 1997, and the vehicle was sold by the State on May 15, 1997. On November 10, 1997, Wade filed a motion for discovery requesting the State produce the vehicle for inspection. The trial court granted this motion on November 12, 1997. However, on November 21, 1997, the State responded

and indicated that the vehicle had been forfeited and sold. Thereafter, on November 24, 1997, the trial court released the State from its obligation to produce the automobile concluding that the vehicle was subject to a proper forfeiture action. Wade's subsequent motion to compel was denied.

Wade claims that he needed access to the vehicle in order to have it professionally photographed and videotaped. Wade contends that this evidence was important because it would have contradicted the testimony of Rainey. Rainey described the vehicle as a black Camaro, needing a paint job around the wheel well and fender wells, with a gold racing stripe around the bottom of the car, a gold highlighted raised hood flap or inlets, and a scuff mark on the back bumper with some rust. Wade disputes that Rainey's description was of his vehicle. Wade claims that his car was a black Camaro, with t-tops, gold iron wheels, a black hood, and a bra on front covering front end damages around the headlights. Wade's description was supported by the testimony of Wade's mechanic, Larry Bowling.

Whether a defendant's due process rights have been violated by the State's failure to preserve evidence depends on whether the evidence in question was "potentially useful evidence" or "material exculpatory evidence." *Samek v. State*, 688 N.E.2d 1286, 1288 (Ind.Ct.App. 1997), *reh'g denied, trans. denied,* (citing to *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988)). In order to prove a violation of his due process rights when the evidence in question is merely potentially useful evidence, Wade must show that the State's failure to preserve the evidence was committed in bad faith. *Id.* However, when the evidence in question is "material exculpatory evidence," the State's good or bad faith in failing to preserve the evidence is irrelevant. *Id.*

Potentially useful evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). Material exculpatory evidence has been defined as evidence which "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984).

Wade asserts that his black Camaro was "potentially exculpatory" evidence because if the jury had been allowed an opportunity to view the actual vehicle or allowed to view professional photographs or videotape of the vehicle, Wade would have been able to impeach Rainey's description. Wade did offer into evidence one photograph of his vehicle, which he claims was of poor quality. Assuming that the actual vehicle would have better matched the description testified to by Wade's mechanic rather than the description offered by Rainey, the evidence still would not have been exculpatory. "Exculpatory is defined as '[c]learing or tending to clear from alleged fault or guilt; excusing.'" *Samek*, 688 N.E.2d at 1288 (citing BLACK'S LAW DICTIONARY 566 (6th ed.1990)). Therefore, even if Wade had been able to present professional photographs or a videotape of the vehicle or if the jury was allowed to see the vehicle, at best this evidence would only discredit Rainey's description but it would not clear Wade from guilt.

Thus, the evidence at issue was at most "potentially useful evidence" and as such Wade must show that the State's failure to preserve the evidence was committed in bad faith. *Id.* "Bad faith is defined as being 'not simply bad judgment or negligence, but rather implies the conscious doing of wrong because of dishonest purpose or moral obliquity.'" *Id.* at 1289 (citing BLACK'S LAW DICTIONARY 139 (6th ed.1990)). The record reveals that

Wade's vehicle was subject to a forfeiture action in which a default judgment was issued against him. Wade did not even request the production or inspection of the vehicle until November 10, 1997, over nine months after the default judgment was entered. Further, the vehicle was not destroyed, rather it was sold to Top Cat Motor Company. Wade made no significant showing that he was unable to locate the new owner of the vehicle for the purposes of photographing or videotaping the vehicle. Moreover, because Wade did not request an inspection of the vehicle until almost twenty-two (22) months after his arrest, there was no way of assuring that the vehicle was in the same condition as it would have been at the time of the robbery. Any delays in requesting inspection of the vehicle or responsibility for failure to respond to the forfeiture action lie with Wade. Accordingly, there was no showing that the State's failure to preserve the vehicle was in bad faith.

## II. *Photo Array and In–Court Identification*

■■■ Wade contends that the photo array shown to witness Amy Stephens (Stephens) was unduly suggestive because his large forehead and bushy mustache made him stand out from the others in the photo array. "Due process of law requires suppression of testimony concerning an out-of-court identification when the procedure employed was unnecessarily suggestive." *Johnson v. State*, 659 N.E.2d 194, 197 (Ind.Ct.App.1995). In determining whether a photo array is unduly suggestive as to create a danger of an irreparable mistaken identification, the totality of the circumstances of the case is reviewed. *Id.* The factors to be considered include: (1) the opportunity of the witness to view the defendant at the scene of the crime; (2) the degree of attention given by the witness; (3) prior descriptions given by the witness regarding the defendant; and (4) the level of certainty illustrated by the witness. *Id.* "If under the totality of the circumstances, the reviewing court finds the out-of-court procedures were not im-

permissively and unnecessarily suggestive, both the evidence of the pretrial lineup and the in-court identification were properly admitted by the trial court." *Bell v. State*, 622 N.E.2d 450, 454 (Ind.1993).

■■■ Stephens positively identified Wade in the photo array and at the trial. She testified that she first observed Wade when he approached the clinic window and pulled out a note and gun. She next observed Wade after he kicked down the door to gain entrance to the room where she was located. He then held a gun to her and took her to the cash drawer, ordering her to fill a pillow case with the clinic's money. Stephens testified that she observed Wade for a total of approximately one to two minutes. Stephens' initial description of Wade was consistent with the description she gave at her deposition and at trial. Further, Stephens testified that she immediately identified Wade as the perpetrator of the robbery when she was shown the photo array and that she was positive that the person she had previously identified was the individual who committed the robbery. She also positively identified Wade in court as the person who robbed the clinic.

■■■ Moreover, the use of a photo array to obtain evidence of the identity of a perpetrator of a crime is generally a permissible investigative method. *Bell v. State*, 622 N.E.2d 450, 455 (Ind.1993). The Indiana Supreme Court has held that where the individuals pictured in a photo array vary in appearance, the array is neither unusual nor impermissibly suggestive. *McGowan v. State*, 599 N.E.2d 589, 592 (Ind.1992); see also *Wolfe v. State*, 562 N.E.2d 414 (Ind.1990); *Neal v. State*, 522 N.E.2d 912 (Ind.1988); and *Fraylon v. State*, 542 N.E.2d 559 (Ind.1989).

In *McGowan*, the Court found that a photo array containing the defendant's photo was not impermissibly suggestive where each photo was of a "black man with a thin mustache" even though the men pictured were of varying ages. *Id.* In the

photo array containing Wade's photograph, all of the men were caucasian with similar builds, and all had curly or wavy hair and mustaches. Although Wade's mustache was larger than the mustaches on the other men, this slight variation did not make the photo array unusual or impermissibly suggestive. "There is no requirement that law enforcement officials 'perform the improbable if not impossible task of finding four or five other people who are virtual twins to the defendant.'" *Farrell v. State,* 622 N.E.2d 488, 494 (Ind.1993) (citing *Pierce v. State,* 267 Ind. 240, 369 N.E.2d 617, 620 (1977)). Therefore, we find that the photo array was not unduly suggestive.

■ Wade also argues that Stephens' in-court identification of him was tainted because the prosecutor had told Stephens where Wade would be sitting. In regard to this issue, Stephens testified as follows:

> DEFENSE COUNSEL: Did anyone talk about where the Defendant was sitting?
>
> STEPHENS: Ms. Welch told me where he would be sitting, the general outlay.
>
> . . .
>
> PROSECUTOR: And when I described to you the layout of the Courtroom, was that a general description of the Courtroom and where things would be, and where you would be sitting?
>
> STEPHENS: Yes.

(R. 953—954).

It is clear from Stephens' testimony that she was merely informed of the general layout of the courtroom and her identification of Wade was not tainted by this information. Stephens positively identified Wade in the photo array and at the trial. Her identification was unequivocal. Further, Wade cites no authority to support his claim that the prosecutor's actions were impermissibly suggestive or violative of his right to due process. Additionally, once Stephens testified that she was provided with information regarding the general layout of the courtroom and where Wade would be seated, Wade failed to object or move to strike Stephens' identification on this basis. See *Hicks v. State,* 491 N.E.2d 996, 997 (Ind.1986); *Porter v. State,* 700 N.E.2d 805, 807 (Ind.Ct.App. 1998) (grounds not argued before the trial court with respect to that evidence are waived on appeal). Accordingly, Wade's argument has not been properly preserved for appeal.

Waiver notwithstanding, Wade's claim that the in court identification was tainted is without merit. In *Harding v. State,* 457 N.E.2d 1098 (Ind.1984), the defendant unsuccessfully presented a similar claim. *Id.* at 1102. In that case, the defendant claimed that the victim's prior knowledge of where the defendant would sit at trial "tainted" her in-court identification of him. *Id.* The evening before trial, the prosecutor had taken the victim to the courthouse so that she could become familiar with the courtroom. *Id.* This court concluded that "[e]ven if we assume such procedure to be unnecessarily suggestive, the in-court identification need not be suppressed if the witness has a basis for an identification independent of the pre-trial procedure." *Id.* As previously addressed, the record clearly demonstrates a proper independent basis for Stephens' identification of Wade.

■ Further, it is worth noting that: "[t]here is a degree of suggestiveness which is inherent in all in-court identifications; the practical necessity of having the appellant sit at the defendant's table with defense counsel naturally sets him apart from everyone else in the courtroom. This type of suggestiveness cannot be avoided because the defendant has a constitutional right to attend his trial and confront the witnesses against him." *Griffin v. State,* 493 N.E.2d 439, 442 (Ind.1986) (citation omitted). "Absent any extraordinary effort to single out the defendant at trial, an in-court identification is not unduly suggestive where the witness is firm in his identification of his assailant." *Id.*

Under these circumstances, there was a sufficient independent basis for the out-of-court identification and the in-court identi-

fication. Therefore, there was no error in admitting both identifications.

### III. *Habitual Offender*

Wade next argues that the trial court improperly dismissed the first jury and impaneled a new jury to hear the habitual offender phase. Wade's trial on the underlying charges was held on March 2, 1998, to March 6, 1998. At the end of the guilt phase, the trial court dismissed the jury and commented:

> Ladies and gentlemen, at this time, having fulfilled your duty to the State of Indiana and Marion County, I would like to on behalf of Judge Pratt and Judge Barney who presided over this proceeding, thank you for your service to the County. The reality is, there are some other matters that are going to involve Mr. Wade, but Judge Pratt has directed that you have worked hard for five days and will be discharged on that, and a second jury will consider some future matters involving Mr. Wade. With that you will be discharged.[2]

(R. 1502—1503). On April 28, 1998, a new jury was empaneled for Wade's habitual offender charge and adjudicated him to be an habitual offender. Prior to the start of the habitual offender trial, Wade objected to empaneling a new jury and requested that the former jury be reconvened. The trial court denied Wade's motion and commented that holding over the first jury would have been extremely inconvenient to them because the verdict had come in late on a Friday. (R. 1519)

In addressing the procedural requirements of the habitual offender phase of the trial, Ind.Code § 35–50–2–8(c) provides in part as follows: "If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing." However, when necessary, a trial court is authorized to impanel a new jury to hear a habitual charge. *Carter v. State*, 505 N.E.2d 798, 801 (Ind.1987); *Ka-*

*lady v. State*, 462 N.E.2d 1299, 1306 (Ind. 1984); *Gibson v. State*, 661 N.E.2d 865, 867 (Ind.Ct.App.1996), *trans. denied.* "A trial on the habitual offender charge involves an issue of fact which is separate from the issues involved in the trial on their underlying felony due to the bifurcated nature of the proceeding as a whole. A new jury is qualified to make the determinations necessary for a finding as to the habitual criminal status." *Kalady v. State*, 462 N.E.2d at 1306. In *Carter*, the trial judge dismissed the jury after it arrived at a verdict because his calender did not allow for a trial on the habitual offender phase for several weeks. *Carter*, 505 N.E.2d at 801. Here, the trial court discharged the jury because of the inconvenience it would have caused the jury to hear the habitual offender phase. Further, as did the defendant in *Carter*, Wade made no objection to setting the case for trial on the habitual offender charge at a later time and before a new jury at the time the first jury was released, although Wade did object to a new jury at the start of the habitual offender phase of the trial. Consequently, the trial court did not err in deciding that Wade be tried by a new jury for the habitual offender phase.

Wade also contends that the State failed to present sufficient evidence that he was a habitual offender. On this issue, our Supreme Court has stated as follows:

> The State's burden in the habitual offender phase of a felony trial is to prove beyond a reasonable doubt that the defendant has accumulated two prior unrelated felonies. Of course, the defendant must have committed the first and been sentenced for it before he commits and is sentenced for the second and the second sentencing must have preceded the commission of the offense of which he was found guilty in the first part of the

---

**2.** These comments were made by Commissioner Murphy, who received the verdict from the jury. This case was tried to a jury before the Honorable John R. Barney, Jr. Judge Barney is a senior judge who heard the case in Marion County Superior Court, Criminal Division, Room 1, the courtroom of the Honorable Tanya Walton Pratt.

trial. Clearly the State must introduce evidence during the habitual proceeding to prove the two priors. On the other hand, the jury hearing the habitual evidence already knows when the defendant committed the crime of which it has just found him guilty. The statute does not require the State to reprove that fact a second time to the same jurors. If a different jury heard the habitual part of the trial, of course, proof would be necessary.

*Smith v. State,* 543 N.E.2d 634, 636 (Ind. 1989); see also *Payne v. State,* 658 N.E.2d 635, 646 (Ind.Ct.App.1995), *trans. denied.* Under the *Smith* decision, evidence of the date of commission of the felony for which enhancement has been sought is required if a different jury hears the habitual part of the trial. *Johnson v. State,* 617 N.E.2d 559, 562 (Ind.Ct.App.1993), *vacated on other grounds,* 659 N.E.2d 116 (Ind.1995). However, proof of the conviction of the underlying offense is not required, even if a second jury is impaneled for the habitual offender phase. *Id.* (citing *Gilliam v. State,* 563 N.E.2d 94 (Ind.1990)). Once a defendant is convicted on the principle underlying felony, "it becomes the law of the case and is outside of the realm of the second assembled jury." *Id.* "The date upon which an offense may have been committed may be found in the State's charging instruments, in transcripts of guilty plea proceedings, within the evidence admitted at trial and in the jury instructions given by the court. The date of commission is not part of the fact of a prior conviction, the proof of which is restricted to authenticated documents." *Id.* (citing *Beavers v. State,* 566 N.E.2d 533, 535 (Ind. 1991)).

Herein, Wade contends that no proof of the underlying offense triggering the habitual offender charge was presented to the newly impaneled jury who heard the habitual offender phase of the trial. Prior to the commencement of the habitual offender phase of the trial, the prosecutor requested that the trial court incorporate the prior testimony and jury verdict from the first part of Wade's trial. Wade objected to this request and the trial court sustained Wade's objection. Thereafter, the State did not attempt to admit evidence of Wade's conviction on the underlying felony conviction during the habitual offender phase of the trial.

However, the jury did receive the following preliminary instruction:

Heretofore, on March 6, 1998, a jury returned guilty verdicts against Defendant, Travis Wade, under this cause number on the charges of:

Robbery, a Class B Felony, Confinement, a Class B Felony, and Confinement, a Class B Felony, the crimes having been committed on December 16, 1995.

Those convictions stand and you are not to speculate about them. You are further instructed that you are not to speculate as to why you are now being asked to determine whether Travis Wade is an habitual offender.

(R. 604).[3]

Accordingly, because the jury was instructed as to the date of the commission of the felony for which enhancement has been sought, and the jury was presented with evidence of two previous unrelated felony convictions (this matter was not disputed by Wade), there was sufficient evidence to support the jury's adjudication of Wade as an habitual offender.

## CONCLUSION

Based on the foregoing, we affirm Wade's convictions for robbery and two counts of confinement. We find that Wade's due process rights were not violated by the State's failure to preserve his vehicle as evidence. Further, we find that the photo array shown to the identifying

---

**3.** Our Supreme Court affirmed the use of a similar preliminary instruction in *Denton v.* *State,* 496 N.E.2d 576, 581 (Ind.1986).

witness was not unduly suggestive and the photo array and in-court identification were properly admitted. Finally, we find that the State presented sufficient evidence to prove Wade to be an habitual offender.

Affirmed.

MATTINGLY, J., and SULLIVAN, J., concur.