

IN THE

# Court of Appeals of Indiana

State of Indiana,

*Appellant-Plaintiff*

v.

Mitchell Jay Bozarth,

*Appellee-Defendant*



FILED

Dec 01 2025, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

December 1, 2025

Court of Appeals Case No.
25A-CR-978

Appeal from the Wayne Superior Court

The Honorable Gregory A. Horn, Judge

Trial Court Cause No.
89D02-2012-F2-24

---

**Opinion by Judge Tavitas**
Judges DeBoer and Scheele concur.

**Tavitas, Judge.**

## Case Summary

The State of Indiana charged Mitchell Bozarth with dealing in a narcotic drug, a Level 2 felony, and operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. Bozarth moved to dismiss the charges against him on the ground that the State failed to preserve video evidence from inside the patrol car in which Bozarth was placed when he was arrested and transported to jail. The trial court granted Bozarth's motion to dismiss, and the State appeals. The State claims that the trial court abused its discretion by granting the motion to dismiss because: (1) the video was not materially exculpatory; and (2) there was no evidence that the State destroyed the video in bad faith. We agree with the State and, accordingly, reverse and remand.

## Issue

The State presents one issue: whether the trial court abused its discretion by granting Bozarth's motion to dismiss.

## Facts

On the evening of October 29, 2020, Officers Logan Schneider and Matt Smarrelli of the Wayne County Sheriff's Department responded to the scene of a single-vehicle accident at the intersection of U.S. Highway 35 and Davis Meyer Road. At the scene, Officer Schneider observed Bozarth pulling himself out of his wrecked car, which had struck a guardrail. Witnesses informed the

officers that Bozarth had been swerving his vehicle, almost struck another vehicle head-on, lost control of his vehicle, and hit the guardrail.

[4] Officer Schneider observed Bozarth stumbling and slurring his words. Bozarth failed the field sobriety tests administered by Officer Schneider. Officer Schneider patted Bozarth down for weapons and contraband but noticed nothing at that time. Officer Schneider placed Bozarth in handcuffs, put Bozarth in the front passenger seat of his patrol car, and transported Bozarth to the hospital to conduct a blood draw and urine screen.

[5] Officer Schneider's patrol car was equipped with a dashboard video camera ("dashcam"), which captured video of the front passenger from "roughly right around the waist, mid-thigh possibly, and then up." Tr. Vol. II p. 9. A video could be manually saved and uploaded to cloud storage. But if a video was not manually saved, it would be automatically deleted in 180 or 190 days.

[6] After the blood draw was conducted, Officer Schneider had to leave the hospital because of a medical emergency involving his wife. Accordingly, Officer Schneider took the blood sample kit to the Sheriff's office and went home before the urine screen was completed.[1] After he went home to get his wife, Officer Schneider went to his patrol car to retrieve his computer. When he did so, he discovered a clear plastic bag that contained a tan, rock-like

---

[1] Bozarth's urine tested positive for cannabis, PCP, amphetamines, opiates, benzodiazepines, and MDMA.

substance on the floorboard of the front passenger seat. A field-test of the substance, which consisted of 111.9 grams, tested positive for heroin.

[7] Officer Schneider informed the other officers of the substance he found in his car, and these officers spoke with Bozarth after advising him of his *Miranda* rights. Bozarth admitted that the heroin belonged to him and stated that he had hidden it under his genitals; the heroin had fallen out of his pants while he was in the patrol car; and he had attempted to kick it under the seat.

[8] Officer Schneider went on paternity leave shortly after this incident, and he forgot to mark the dashcam video so that it would be saved past the automatic-deletion period. Because of this, the video was deleted after 180 or 190 days.

[9] On December 30, 2020, the State charged Bozarth with dealing in a narcotic drug, a Level 2 felony, and operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. The State subsequently amended the charging information to add an allegation that Bozarth was an habitual offender.

[10] On February 19, 2025, Bozarth moved to dismiss the charging information under Indiana Code Section 35-34-1-4(a)(11), which provides that "[t]he [trial] court may, upon motion of the defendant, dismiss the indictment or information upon any . . . other ground that is a basis for dismissal as a matter of law." Bozarth claimed that the State's failure to preserve the dashcam video violated his due process rights as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963).

The trial court held a hearing on Bozarth's motion to dismiss on February 25, 2025, and granted the motion on March 30, 2025. The trial court's order provides in relevant part:

> The Court finds that the in-car dash-cam video and audio coverage would have been exculpatory. Again, evidence is exculpatory if it possesses an exculpatory value that was apparent before the evidence was lost or destroyed and must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. The now lost or destroyed footage would show Bozarth in the front passenger seat of the patrol car with his hands in handcuffs behind his back and show and demonstrate from its video coverage any movements in his torso caused by his legs kicking the drugs under his seat. The Court finds this **potentially exculpatory** evidence to be readily apparent before it was lost or destroyed by the Richmond Police Department. Indeed, it was known to exist by law enforcement prior to it being lost or destroyed. The Court also finds that Bozarth would be unable to obtain comparable evidence by any other reasonably available means. The Court understands that Bozarth can testify that he never moved his legs or kicked the drugs under his seat. The reality, however, is that the jury would in all likelihood find such testimony to be self-serving and unbelievable. It is only the car dash-cam video and audio coverage that can provide the proof of what actually did or did not occur in Officer Schneider's patrol car. The Court finds the lost or destroyed car dash-cam video to be materially exculpable evidence.
>
> When the State fails to preserve materially exculpable evidence, a due process violation occurs regardless of whether the State acted in bad faith. Preservation of evidence is fundamental for all law enforcement to ensure fairness and accountability. While, admittedly, **the Court finds there to be no foul play here**, it remains that the best evidence of whether or not Bozarth kicked

or otherwise somehow placed the drugs under the seat affront passenger seat of the patrol car would be shown by the car dash-cam video coverage as to his upper body movement resulting from kicking or using his feet to move the drugs under the seat. There is no other comparable evidence from any other reasonably available means.

Appellant's App. Vol II pp. 170-72 (emphases added, citations omitted). The State now appeals.[2] *See* Ind. Code § 35-38-4-2(a)(1) ("Appeals to the supreme court or to the court of appeals, as provided by court rules, may be taken by the [S]tate as of right . . . [f]rom an order granting a motion to dismiss one (1) or more counts of an indictment or information.").

## Discussion and Decision

### Standard of Review

The State claims that the trial court erred by granting Bozarth's motion to dismiss.[3] We generally review a trial court's ruling on a motion to dismiss for an abuse of discretion. *State v. Katz*, 179 N.E.3d 431, 440 (Ind. 2022). A trial court abuses its discretion if its decision is clearly against the logic and effect of

---

[2] We held oral argument in this case on November 5, 2025, at Chesterton High School. We extend our thanks to the faculty and staff of the school for their hospitality, and we thank the students who attended the oral argument for their attention and insightful questions after the argument. We also thank counsel for both parties for the quality of their arguments and for remaining after the argument to answer the students' questions.

[3] Bozarth conceded at oral argument that the trial court erred in dismissing the charge of operating a vehicle while intoxicated, which was not based on the heroin found in the patrol car.

the facts and circumstances or if the court misinterpreted the law. *Id*. (citing *Katz*, 179 N.E.3d at 440). We review any questions of law de novo. *See id*.

[13] The trial court granted Bozarth's motion to dismiss on the grounds that the State violated Bozarth's due process rights by failing to preserve the video from Officer Schneider's dashcam in violation of *Brady v. Maryland*. This Court recently summarized *Brady* and its progeny as follows:

> In *Brady*[], the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *See also Arizona v. Youngblood*, 488 U.S. 51, 55 [] (1988). "The State's failure to preserve materially exculpatory evidence is a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Bennett v. State*, 175 N.E.3d 331, 334 (Ind. Ct. App. 2021), *trans. denied*. "[T]he failure to preserve 'potentially useful evidence'—as opposed to material[ly] exculpatory evidence—violates the Fourteenth Amendment only when the defendant can show bad faith on the part of police." *Noojin v. State*, 730 N.E.2d 672, 676 (Ind. 2000) (citing *Youngblood*, 488 U.S. at 58[]).

*Alexander v. State*, 197 N.E.3d 367, 369-70 (Ind. Ct. App. 2022).

[14] There seems to be a slight difference between evidence that the State withholds from the defendant (which is governed by *Brady*) and evidence that the State fails to preserve (which is governed by *Youngblood*). *See* 6 LaFave, Israel, King & Orr, Crim. Proc. § 24.3(e) (4th ed. 2024 Update) (noting that the Court in *California v. Trombetta*, 467 U.S. 479, 486 (1984), observed that "the question of

'the government's duty to take affirmative steps to preserve evidence' was only roughly analogous to the question presented in 'nondisclosure cases'" such as *Brady*). We, therefore, address Bozarth's claim as one of failing to preserve evidence, not the failure to disclose evidence.

## A. The dashcam video was not materially exculpatory.

"To determine whether a defendant's due process rights have been violated by the State's failure to preserve evidence, we must first decide whether the evidence in question was 'potentially useful evidence' or 'materially exculpatory evidence.'" *Land v. State*, 802 N.E.2d 45, 49 (Ind. Ct. App. 2004) (quoting *Chissell v. State*, 705 N.E.2d 501, 504 (Ind. Ct. App. 1999), *trans. denied*), *trans. denied*. As set forth above, if the evidence was materially exculpatory, the good faith of the police is immaterial; but if the evidence is merely potentially useful, then the defendant must also show that the police acted in bad faith in failing to preserve the evidence. *Alexander*, 197 N.E.3d at 369-70.

"'Materially exculpatory evidence' is evidence that 'possesses an exculpatory value that was apparent before the evidence was destroyed' and must 'be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Taylor v. State*, 236 N.E.3d 700, 712 (Ind. Ct. App. 2024) (quoting *Youngblood*, 488 U.S. at 58). In contrast, "'[p]otentially useful evidence' is evidence about 'which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Id.* (quoting *Trombetta*, 467 U.S. at 489). "Although a defendant is not required to conclusively prove the destroyed

evidence was materially exculpatory, 'there must be some indication that the evidence was exculpatory.'" *Id.* at 712-13 (quoting *Johnson v. State*, 507 N.E.2d 980, 983 (Ind. 1987)). "'[W]e cannot assume that the destroyed evidence contained exculpatory material when the record is devoid of such indication.'" *Id.* (quoting *Johnson*, 507 N.E.2d at 983).

[17] We agree with the State that nothing suggested that the dashcam video was exculpatory before it was destroyed. For it to be exculpatory, the video would have had to depict someone else dropping the heroin on the floorboard of the patrol car. But Officer Schneider testified that no one else other than himself and Bozarth were in the patrol car at the relevant time. Moreover, Bozarth later *admitted* that he had hidden the heroin in his pants, the heroin fell out of his pants while he was in the patrol car, and he attempted to kick the heroin under the seat to hide it. Thus, given Bozarth's admissions, the video could have been potentially useful to the State.

[18] We find this case to be similar to *Chissell v. State*, 705 N.E.2d 501, 504 (Ind. Ct. App. 1999). There, the defendant was convicted of operating a vehicle while intoxicated and argued on appeal that he had been denied due process because the police failed to preserve videotapes of him performing field sobriety tests at the scene and at the jail. Although the arresting officer's vehicle was equipped with an in-car camera, Chissell's stop and arrest were not recorded "for some reason." *Id*. at 504. Chissell argued that the videotapes would be materially exculpatory if they contained evidence of him passing the field sobriety tests.

But nothing in the record supported Chissell's contention that the videotapes might show him passing the tests.

[19] On appeal, this Court refused to speculate that the videotapes contained any such footage and held that the missing videotapes were, therefore, not materially exculpatory. *Id.* Instead, the Court held the videotapes were potentially useful evidence. *Id.* Because there was "no showing that the tapes were erased intentionally or negligently by the police in order to suppress material evidence," Chissell could not show bad faith on the part of the police. *Id.* Thus, he was not denied due process. *Id.*; *see also Ko v. State*, 243 N.E.3d 1153, 1159-60 (Ind. Ct. App. 2024) (affirming denial of motion to dismiss on grounds that police failed to preserve jail video showing defendant speaking with undercover officer and other inmate where, despite defendant's claims that video would have depicted the other inmate "'grooming' [defendant] to make murderous solicitations," there was no evidence supporting this theory, the evidence was, at best, potentially useful, and there was no showing of bad faith), *trans. denied*; *Taylor*, 236 N.E.3d at 713 (affirming denial of defendant's motion to set aside verdict on grounds that police failed to preserve arresting officer's body camera video because defendant offered "nothing more than speculation about the possible exculpatory value of [the officer]'s body camera footage," and there was no evidence of bad faith on the part of the police).

[20] We agree with the State that *Chissell*, *Ko*, and *Taylor* are on all fours with the present case. Nothing in the record suggests that the dashcam video here would have shown someone else dropping and hiding the heroin. To the contrary,

Bozarth admitted that he dropped the heroin and attempted to hide it. Thus, the dashboard video was, at most, potentially useful evidence, not materially exculpatory.[4]

## B. The dashcam video was not destroyed in bad faith.

[21] Because the dashcam video was only potentially useful, Bozarth was required to demonstrate that the police acted in bad faith to establish a violation of his due process rights. *See Alexander*, 197 N.E.3d at 369-70. To show bad faith, it is not enough to show mere bad judgment or negligence. *Land v. State*, 802 N.E.2d 45, 51 (Ind. Ct. App. 2004). Instead, "'[b]ad faith . . . implies the conscious doing of wrong because of dishonest purpose or moral obliquity.'" *Id.* (quoting *Wade v. State,* 718 N.E.2d 1162, 1166 (Ind. Ct. App. 1999)).

[22] Here, Bozarth did not argue before the trial court that the police acted in bad faith, and the trial court specifically found that there was no "foul play" on the part of the police. Appellant's App. Vol. II p. 172. Moreover, there is evidence to support the trial court's finding. Officer Schneider left his shift early on the night he arrested Bozarth because the officer's wife had a medical emergency. He then went on paternity leave shortly thereafter and forgot to mark the video

---

[4] Bozarth cites no Indiana case holding that withheld or destroyed evidence was, in fact, materially exculpatory. Nor has our research found any case where an Indiana court has so held. Even federal cases that so hold seem few and far between. *See, e.g., Ballinger v. Kirby*, 3 F.3d 1371 (10th Cir. 1993) (habeas petitioner's due process rights were violated by the prosecution's failure to produce an allegedly exculpatory photograph because photograph would have provided additional impeachment of the codefendant which could have destroyed the codefendant's credibility); *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995) (prosecution's withholding from murder defendant of evidence tending to show that another person had committed the crime was sufficiently material to have violated habeas petitioner's right to due process).

so that it would be saved past the automatic-deletion period. Because of this, the video was deleted after 180 or 190 days. We, therefore, conclude that there is no evidence of bad faith on the part of the police in failing to preserve the dashcam video. The absence of bad faith is fatal to Bozarth's claim that the failure to preserve the video denied him due process.[5]

## C.  Bozarth was not denied due process under the Indiana Constitution.

[23]     Bozarth also argues that the trial court properly dismissed the charges based on a violation of due process under Article 1, Section 12 of the Indiana Constitution, which Bozarth claims provides broader protection than the federal Constitution. Specifically, he claims that earlier Indiana case law allows for the dismissal of criminal charges when police merely negligently destroy evidence. Appellee's Br. p. 10 (citing *Birkla v. State*, 323 N.E.2d 645 (Ind. 1975); *Hale v. State*, 230 N.E.2d 432 (Ind. 1967)). In *Birkla*, our Supreme Court wrote, "Prior to any request for discovery by the defendant, the **negligent** destruction or withholding of material evidence by the police or the prosecution may present grounds for reversal." 323 N.E.2d at 648 (citing *Hale*, 230 N.E.2d at 435) (emphasis added).

---

[5] Bozarth argues that the policy to automatically delete videos after 180 or 190 days, unless the videos were manually tagged to be saved, is itself evidence of bad faith. He claims that the State presented no evidence or rationale as to why the videos were not kept for a longer time or why they were not manually reviewed to ensure they did not contain exculpatory evidence. He also claims that, although Officer Schneider may have been on paternity leave, several other officers were involved in the case, yet not one of them marked the video to be saved. Thus, he claims that "at some point, police action is so negligent that it becomes bad faith." Appellee's Br. p. 16. We need not decide whether gross negligence could ever suffice to satisfy the requirement of bad faith because the police action here was, at most, mere negligence.

In its reply brief, the State claims that Indiana courts have since expressly adopted the federal standard requiring bad faith, not merely negligence, citing *Kindred v. State*, 524 N.E.2d 279, 299 (Ind. 1988), and *Holder v. State*, 571 N.E.2d 1250, 1255 (Ind. 1991). But neither of these cases appears to have involved a claim under the Indiana Constitution. Cases from this Court, however, have expressly stated that, when reviewing a claim of improperly preserved evidence, "[t]he analysis under the Indiana Constitution is identical to the federal analysis." *Terry v. State*, 857 N.E.2d 396, 406 n.8 (Ind. Ct. App. 2006) (citing *Stoker v. State*, 692 N.E.2d 1386, 1390 (Ind. Ct. App. 1998) ("[T]his court has previously concluded that the standard for evidence preservation under the Indiana Constitution is consistent with the federal analysis.")).

Regardless, cases from our Supreme Court since *Birkla* and *Hale* have clarified that, even under a negligence standard, a defendant is not "required to conclusively prove that the destroyed evidence was exculpatory," but "there must be some indication that the evidence was exculpatory[,] and we cannot assume that the destroyed evidence contained exculpatory material when the record is devoid of such indication." *Johnson v. State*, 507 N.E.2d 980, 983 (Ind. 1987) (citing *Wilson v. State*, 432 N.E.2d 30, 32-33 (Ind. 1982)). Thus, even under a negligence standard, there must be some indication that the evidence that was destroyed was indeed exculpatory. As we held above, here, not only was there no evidence that the dashcam video was exculpatory, but there was

evidence in the form of Bozarth's own statement that the video was **not** exculpatory. Accordingly, Bozarth's Indiana Constitution argument also fails.

## Conclusion

[26] The dashcam video was not materially exculpatory and was at most potentially useful given that Bozarth admitted that the heroin belonged to him. Because the evidence was merely potentially useful, Bozarth was required to show bad faith on the part of the police in failing to preserve the video, and there was no evidence of bad faith. The trial court abused its discretion in granting Bozarth's motion to dismiss. Accordingly, we reverse the trial court's order and remand for further proceedings.

[27] Reversed and remanded.

DeBoer, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Attorney General of Indiana

Jesse R. Drum
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Peter Capofari
Capofari Law, LLC
Noblesville, Indiana