Gregory TERRY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0512–PC–1127.

Court of Appeals of Indiana.

Nov. 27, 2006.

Vickie Yaser, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

### Case Summary

Gregory Terry appeals his convictions of dealing cocaine, a Class B felony, possession of cocaine, a Class D felony, and knowing flight from a law enforcement officer, a Class A misdemeanor, following a jury trial, and the post-conviction court's denial of his petition for post-conviction relief.[1] Concluding that Terry received effective assistance of counsel, that his due process rights were not violated by the State's destruction of evidence, that the trial court's instruction was proper, and

that any error in the admission of identification evidence was harmless, we affirm.

### Issues

In this appeal, Terry raises four issues, which we restate as follows:

(1) Whether Terry received effective assistance of counsel;

(2) Whether Terry's due process rights were violated when the State destroyed evidence following Terry's trial;

(3) Whether the trial court properly instructed the jury on the State's burden of proof;  and

(4) Whether the trial court properly admitted identification evidence.

### Facts and Procedural History

On April 6, 2004, Indianapolis Police Department ("IPD") Officers Bryant Allen and Christina Slack were on the east side of the city in an unmarked vehicle attempting to make an undercover narcotics purchase. Officers Karla Baldini and Richard Weaver were following Officers Allen and Slack in another unmarked vehicle. From their vehicle, Officers Allen and Slack observed a man later identified as Terry walking on the sidewalk. The Officers motioned Terry over to their vehicle and asked him if he had any crack-cocaine for sale. Terry responded that he did, and after a brief conversation, gave the officers what was later determined to be a quarter gram of cocaine in exchange for a twenty-dollar bill previously marked by Officer Weaver. As Terry walked away from the vehicle, he passed Officers Weaver and Baldini's vehicle.

---

1. Terry's due process and ineffective assistance of counsel claims come to us on appeal from the post-conviction court's denial of Terry's Petition for Post–Conviction Relief. Terry's claims regarding the jury instruction and the admission of identification evidence come to us on direct appeal.

Officers Slack and Allen radioed to uniformed officers in the area that the transaction was complete and instructed them to apprehend Terry. Officers Michael Roach, Matt Jennings, and Shawn Looper then arrived on the scene. Upon seeing Officer Looper, Terry ran between two houses and through an alley. Officer Looper chased Terry, identifying himself as a police officer and instructing Terry to stop. During the chase, Officer Looper observed Terry throw down what appeared to be a wad of money. The Officers were ultimately unable to apprehend Terry. During a search of the neighborhood, Officer Roach discovered a pager in the area between the two houses where Terry had run from Officer Looper. Officers also found the money used to purchase the cocaine.

Later that day, Officer Baldini called several numbers that appeared on the pager, pretending to be a citizen attempting to return the pager to its owner. One individual stated that the only person whom he paged from the number identified by Officer Baldini was his brother, Gregory Terry.[2] Officer Baldini then located a picture of Terry in IPD records, and recognized him as the man who had sold Officers Slack and Allen cocaine earlier that day. Officer Baldini showed Terry's picture to the other officers involved, and each officer likewise identified Terry.

On April 15, 2004, the State filed charges against Terry. Terry had his initial hearing on May 5, 2004. Todd Woodmansee entered his appearance as Terry's public defender on May 12, 2004, but on June 11, 2004, Karen Huelskamp entered her appearance replacing Woodmansee. On June 30, 2004, Terry filed an Affidavit in Support of the Belated Notice of Alibi, which the trial court granted the same day. On July 1, 2004, Terry filed his Notice of Alibi Defense and a Motion to Produce Evidence, specifically requesting "[t]he names and phone numbers of people contacted to verify that the pager belonged to Gregory Terry" and "[t]he business records from the service provider on the pager stating who the owner of the pager was." Appellant's Appendix at 30. Attorney Huelskamp filed this motion because Terry claimed he did not own the pager, and therefore, she wanted to determine the scope of the investigation the police had conducted regarding the pager.

On August 4, 2004, Terry requested a speedy trial, which the trial court scheduled for October 4, 2004. The State responded to Terry's discovery request approximately two weeks before trial, indicating it had conducted no investigation beyond the phone calls to determine the pager's ownership. The State explained that the delay in response to discovery was due to the prosecutor being out of town for approximately four weeks. On September 24, 2004, Terry filed a Motion to Suppress the Officers' pre-trial and in-court identifications of Terry. Attorney Huelskamp told the trial court that although she did not receive timely discovery from the State, she chose to file a motion to suppress rather than a motion to exclude, in part because of the imminent speedy trial date. After a hearing, the trial court denied Terry's motion to suppress.

At the October 4 trial, Officers Baldini, Allen, Slack, and Weaver testified for the State and identified Terry as the man who

---

**2.** At the hearing on Terry's motion to suppress, Officer Baldini testified that the person to whom she spoke identified Terry as his brother. At trial, Officer Baldini testified that the person could have said that Terry was his brother or close family member.

had sold Officers Allen and Slack cocaine.[3] Evidence regarding the pager was also introduced. Attorney Huelskamp testified at the post-conviction hearing that she did not object to anything involving the pager so that she could demonstrate, on cross-examination, the poor quality of the investigation. She also testified that she did not request a limiting instruction as to the hearsay statement of the unknown man identifying Terry as his brother because she didn't want to limit the scope of her cross-examination relating to the pager. Terry's sister testified for the defense, stating that Terry had been at her apartment for a barbeque the entire afternoon. In its closing argument, the State commented on Terry's alibi defense, stating "[t]here's fifteen to twenty people there [at the barbeque] and where are they today, why aren't any of those other individuals here to corroborate that story." Trial Transcript at 166. The State also said that "the law states it is permissible for the officers just to see one photo [;] it is not required that they see an entire photo array." *Id.* at 167. Attorney Huelskamp did not object to either statement.

The jury found Terry guilty of all charges after his trial on October 4. On November 5, 2004, the trial court sentenced Terry to an aggregate sentence of twelve years. Terry filed his notice of appeal on November 30, 2004. Upon petition by Terry, this court terminated his direct appeal on March 28, 2005, and remanded to the trial court with instructions to conduct post-conviction proceedings.

Terry then filed a Petition for Post–Conviction Relief alleging, among other things, ineffective assistance of counsel. At the post-conviction hearing, Terry requested that the post-conviction court

deem his petition amended to conform to the evidence that two days after trial, Officer Baldini instructed IPD's property branch to schedule the pager for disposal, and that the pager was destroyed roughly two and one-half months later. The post-conviction court granted this request. Both parties submitted suggested findings of fact and conclusions of law. The post-conviction court adopted the State's findings, and denied Terry's Petition for Post–Conviction Relief. Terry now appeals.

*Discussion and Decision*

I.   Ineffective Assistance of Counsel

Terry appeals the post-conviction court's denial of his petition, arguing that the post-conviction court should have granted his petition because he received ineffective assistance of counsel at his trial.

A.   Standard of Review

■   Post-conviction proceedings are civil in nature. *Stevens v. State,* 770 N.E.2d 739, 745 (Ind.2002), *cert. denied,* 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). Therefore, to prevail, petitioners must establish their claims by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Stevens,* 770 N.E.2d at 745. On appeal from a denial of a petition for post-conviction relief, petitioners must convince this court that the evidence, taken as a whole, leads unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

■■   When reviewing ineffective assistance of counsel claims, Indiana courts use the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wentz v. State,* 766 N.E.2d 351, 360 (Ind.2002). Under the first prong, the petitioner must

---

**3.**   Officer Looper also testified for the State, but the trial court sustained Terry's objection

to his identification of Terry.

establish that counsel's performance was deficient; that is, the performance fell below an objective standard of reasonableness, thereby denying the petitioner the right to counsel as guaranteed by the Sixth Amendment to the United States Constitution. *Smith v. State*, 765 N.E.2d 578, 585 (Ind.2002). We presume that counsel provided adequate assistance and defer to counsel's strategic and tactical decisions. *Id.* at 585. "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Douglas v. State*, 800 N.E.2d 599, 607 (Ind.Ct.App.2003), *trans. denied.* Under the second prong, the petitioner must demonstrate prejudice; that is, petitioner must demonstrate a reasonable probability that the result of the trial would have been different if counsel had not made the errors. *Wentz*, 766 N.E.2d at 360. If our confidence that the result would have been the same is undermined, we will find that a reasonable probability exists. *Id.* If we can reject an ineffective assistance of counsel claim based on lack of prejudice, we need not address whether counsel provided deficient performance. *Id.*

### B. Terry's Representation at Trial

Terry alleges that he received ineffective assistance of counsel based on several acts or omissions by Attorney Huelskamp during the course of her representation. We address each in turn.[4]

### 1. Counsel's Strategy Regarding Pager

Terry first alleges that his trial counsel was ineffective for her "[f]ailure to follow through on strategy regarding [the] pager." Appellant's Brief at 26. Terry argues that Attorney Huelskamp's original strategy was to establish who owned the pager, and with whom Officer Baldini spoke regarding ownership of the pager, and that it was unjustifiable for her to file a motion to suppress instead of either persisting in attempts to learn the pager owner's identity, moving to exclude the pager as evidence, or seeking dismissal of the charges based on the State's failure to timely respond to discovery. We disagree.

▉ With regard to Attorney Huelskamp's failure to further investigate the pager's ownership, Attorney Huelskamp had "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. We give a great deal of deference to counsel's judgments regarding the extent and scope of investigation. *Parish v. State*, 838 N.E.2d 495, 500 (Ind.Ct.App.2005). Attorney Huelskamp testified that it was her strategy "to show that the Police Officer never really determined who owned the pager." Post–Conviction Transcript at 70. This strategy is legitimate, and we will not second-guess Attorney Huelskamp's tactical decision to not continue the investigation. At most,

---

4. Terry also argues that he received ineffective assistance of counsel based on Attorney Huelskamp's failure to object to the jury instruction on reasonable doubt and Attorney Huelskamp's litigation of the suppression of the in-court and pre-trial identifications. We hold, *infra*, that the trial court properly gave the instruction, properly admitted the in-court identifications, and that the admission of the pre-trial identifications was at most harmless error. Therefore, Terry cannot satisfy *Strickland*'s prejudice prong for his claims based on these matters, and we need not address the performance prong. We note, however, that Attorney Huelskamp attempted to suppress the pre-trial and in-court identifications, actually prevented Officer Looper from identifying Terry at trial, and properly objected to all identifications at trial, thereby preserving the issue for appeal. Moreover, in her cross-examinations and closing argument, Attorney Huelskamp consistently attacked the procedures used by the police and the credibility of the identifications.

additional investigation may have helped further demonstrate the incompleteness of the police investigation, but Attorney Huelskamp was already able to demonstrate this incompleteness through the evidence of the lack of investigation into the pager's ownership. Moreover, Terry cannot demonstrate prejudice. Even assuming more investigation would have revealed the pager's owner could not be linked to Terry, the State still had the eye-witness testimony of four police officers identifying Terry as the person who sold cocaine to Officers Slack and Allen. Based on this testimony, we conclude that Terry suffered no prejudice by Attorney Huelskamp's failure to further investigate the pager's ownership.

■ With regard to Terry's argument that Attorney Huelskamp should have sought exclusion of the evidence or dismissal based on the State's untimely response to her discovery request, unless evidence demonstrated the State deliberately failed to reply timely to the request, or otherwise acted in bad faith, thereby denying Terry the right to a fair trial, exclusion of evidence is not a proper sanction. *Green v. State*, 575 N.E.2d 296, 301 (Ind.Ct.App.1991), *trans. denied.* A defendant faces an "even heavier burden when [seeking] the extreme sanction of dismissal" based on a discovery violation. *Carter v. State*, 512 N.E.2d 158, 171 (Ind.1987). Instead, a continuance is usually the proper remedy for discovery violations. *Green*, 575 N.E.2d at 301. Here, the State's failure to timely respond to Terry's discovery request apparently was the result of the prosecutor being out of town for approximately four weeks. The record reveals no evidence of bad faith. Because Terry cannot demonstrate that a motion to exclude or dismiss would have been successful, he cannot satisfy *Strickland*'s prejudice prong.

### 2. Admission of Pager Into Evidence

■ Terry next argues that Attorney Huelskamp's assistance was ineffective based on her failure to object to the admission of the pager into evidence. Ordinarily, a decision to "explain evidence, rather than exclude it, is a tactical decision within counsel's reasonable professional judgment." *Mullins v. State*, 504 N.E.2d 570, 573 (Ind.1987); *see Smith v. State*, 689 N.E.2d 1238, 1245 (Ind.1997) (counsel's decision to allow defendant's confession to be admitted and attempt to explain it "falls within the wide range of reasonable professional assistance"). Attorney Huelskamp testified that she "considered trying to keep the pager out ... but decided it would be better to go ahead and present the evidence of their lack of investigation." P.C. Tr. at 70–71. This decision was reasonably calculated, and we will not second-guess it on appeal.

### 3. Admission of Hearsay Evidence

■ Next, Terry argues that Attorney Huelskamp's assistance was ineffective based on her failure to object to, or request a limiting instruction for, hearsay evidence presented by the State. Terry argues that Attorney Huelskamp should not have allowed Officer Baldini to testify that someone she spoke to on the telephone linked Terry to the pager. Attorney Huelskamp testified that she considered objecting to the admission of the evidence, but "decided that since we had so many Officers saying that it was Mr. Terry that perhaps it would be in his benefit to show that there was not a lot of investigation done when they found the pager," and that she "didn't want to limit what [she] would be able to get into with the pager." P.C. Tr. at 69. Therefore, Attorney Huelskamp felt it was consistent with her defense strategy to allow

the hearsay evidence to come in as substantive evidence, and then argue the inadequacy of the police investigation. *Id.* Attorney Huelskamp also wanted the statement to be admitted into evidence so that she could demonstrate that the person with whom Officer Baldini spoke stated that Terry lived in the vicinity of the area where the cocaine sale took place; Terry actually lived with his mother, roughly a half-hour away from the place of the sale. Also, Officer Baldini testified at the suppression hearing that the man had indicated that Terry was his brother; Terry, in fact, has no brothers. Attorney Huelskamp emphasized both these points in her closing argument while criticizing the police investigation and attacking the credibility of the identification. Again, Attorney Huelskamp's decision to not object to the admission of the hearsay evidence or to request a limiting instruction is the sort of reasonably calculated tactical decision we will not second-guess on appeal.

### 4. State's Closing Argument

Terry next argues that Attorney Huelskamp's assistance was ineffective based on her failure to object to some of the State's comments during closing argument. Specifically, Terry argues that Attorney Huelskamp should have objected to the following statements: (1) "the law states it is permissible for the officers just to see one photo [;] it is not required that they see an entire photo array," trial tr. at 167; and (2) "There's fifteen (15) to twenty (20) people [at his sister's barbeque] and where are they today, why aren't any of those other individuals here to corroborate that story." *Id.* at 166.

■ With regard to the first comment, Terry has failed to demonstrate how this comment caused him prejudice, even if this statement incorrectly states the law.[5] We conclude that this statement had no effect on the outcome of the case and that therefore Terry cannot meet *Strickland*'s prejudice prong.

■ With regard to the second comment, "the prosecutor's comment upon the lack of evidence by the defense concerning otherwise incriminating evidence against the defendant is proper as long as the State does not focus upon the accused's failure to testify." *Peterson v. State,* 699 N.E.2d 701, 705 (Ind.Ct.App.1998). For example, our supreme court held that the following statement made by a prosecutor in closing was proper: "Have we ever really found out or [had] any explanation where [the defendant] was that morning. Let's see, has there been any witnesses presented who have told us where [the defendant] was that morning?" *Callahan v. State,* 527 N.E.2d 1133, 1136–37 (Ind. 1988). Similarly, the prosecutor in this case merely commented on the weight of the evidence presented by Terry, and neither commented on Terry's failure to testify nor impermissibly shifted the burden of proof. The prosecutor merely pointed out the weakness of Terry's alibi defense, and in no way insinuated that Terry was required to provide such a defense or that the jury must believe Terry's alibi in order to acquit Terry. Because an objection to the prosecutor's comments would not have been successful, Attorney Huelskamp's failure to object to the comments was not deficient representation, and Terry suffered no prejudice.

---

**5.** As discussed, *infra,* the question of whether the law permits the procedure by which Officers Slack, Allen, and Weaver made their pre-trial identifications has not been decided in Indiana.

## II. Destruction of Evidence

Terry argues that the State's destruction of the pager after his trial prevented him from exercising his due process rights by testing the pager and obtaining proof of its ownership,[6] and that the post-conviction court erred by not granting him relief based on this denial of rights.[7] We disagree.

■■■ Criminal defendants have the right to examine physical evidence in the hands of the State under the Fourteenth Amendment to the United States Constitution and Article One, Section Twelve of the Indiana Constitution.[8] *Smith v. State,* 586 N.E.2d 890, 893 (Ind.Ct.App.1992). However, the State does not have "an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

■■■■ When determining whether Terry's due process rights were violated by the State's failure to preserve the pager, we must first determine whether the pager was "potentially useful evidence" or "materially exculpatory evidence." *Blanchard v. State,* 802 N.E.2d 14, 26 (Ind. Ct.App.2004) (citing *Youngblood,* 488 U.S. at 57, 109 S.Ct. 333). Evidence is "materially exculpatory" if it "possess[es] an ex-culpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 27 (quoting *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Evidence is exculpatory if it is " '[c]learing or tending to clear from alleged fault or guilt; excusing.' " *Land v. State,* 802 N.E.2d 45, 49 (Ind.Ct.App.2004), *trans. denied,* (quoting *Wade v. State,* 718 N.E.2d 1162, 1166 (Ind.Ct.App.1999), *trans. denied* ). When the State fails to preserve materially exculpatory evidence, a due process violation occurs regardless of whether the State acted in bad faith. *Blanchard,* 802 N.E.2d at 26–27. On the other hand, evidence is merely "potentially useful" if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 26 (quoting *Youngblood,* 488 U.S. at 57, 109 S.Ct. 333). When the State fails to preserve potentially useful evidence, a due process violation occurs only if the defendant shows the State acted in bad faith. *Id.*

Before addressing the merits of Terry's argument, we note that *Youngblood* and the Indiana cases following it all deal with the destruction of evidence prior to the conclusion of a defendant's trial. Terry's

---

6. The pager company has no records of an account associated with the pager's serial number. However, a company representative indicated that if the pager was available, the company could perform further tests to establish information relevant to the pager's ownership or subscriptions purchased for the pager.

7. Terry also argues that the State disposed of the pager in contravention of Indiana Code section 35–33–5–5 and common law property rights. However, section 35–33–5–5 applies only to property "seized by any law enforcement agency as result of an arrest, search warrant, or warrantless search . . . ." Ind. Code § 35–33–5–5(a); *see Tracy v. State,* 655 N.E.2d 1232, 1235 (Ind.Ct.App.1995). The pager in this case was not "seized," as the police found it on the ground, and the statute is therefore inapplicable. *Tracy,* 655 N.E.2d at 1235. We also fail to see how the police disregarded Terry's property rights in the pager, as Terry wanted to access the pager to prove that it did not belong to him.

8. The analysis under the Indiana Constitution is identical to the federal analysis. *Stoker v. State,* 692 N.E.2d 1386, 1390 (Ind.Ct.App. 1998).

claim, on the other hand, deals with the State's destruction of evidence after he was convicted. We have found no Indiana or federal case applying *Youngblood* to the destruction of evidence after trial. Holding that *Youngblood* and its progeny apply to the destruction of evidence after the conclusion of trial would be a significant extension of existing law. *See Lovitt v. True,* 403 F.3d 171, 187 (4th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 400, 163 L.Ed.2d 278 (2005). However, we do not need to decide the scope of *Youngblood* here, and express no opinion relating to its scope, because we conclude that even if *Youngblood* applies, Terry has not demonstrated a violation.

1. Nature of the Destroyed Evidence

██ ██ "[W]hile a defendant is not required to prove conclusively that the destroyed evidence is exculpatory, there must be some indication that the evidence was exculpatory." *Blanchard,* 802 N.E.2d at 27. If the defendant fails to demonstrate the evidence's exculpatory nature, we will not simply "assume that the destroyed evidence contained exculpatory material when the record is devoid of such indication." *Id.*

██ Terry argues that the pager is materially exculpatory evidence because "the pager was the only piece of evidence which could have affirmatively proven the identification of Terry as the drug dealer was erroneous," and that "[i]t was apparent to the State before the pager was destroyed that Terry believed it would prove his innocence ...." Appellant's Brief at 28–29. We disagree.

In *Chissell v. State,* 705 N.E.2d 501, 504 (Ind.Ct.App.1999), *trans. denied,* we held that videotapes of the defendant taking field sobriety tests were not materially exculpatory because the defendant presented no evidence that the tapes would show him passing the tests, and instead asked us to speculate as to the tapes' contents. Similarly, Terry presents no evidence that tests of the pager would reveal that neither Terry nor someone connected to Terry owned the pager. We will not speculate as to what the results of the tests might have been.

Even if the tests revealed that some unconnected third person owned the pager, we conclude that this evidence would not be exculpatory. The pager was not the only piece of evidence linking Terry to the crime scene. Indeed, the principal evidence relied upon by the State was the testimony of four eyewitness police officers, who all identified Terry as being on the scene. In fact, Attorney Huelskamp demonstrated that the State could not prove that Terry owned the pager, and Officer Baldini testified that the man with whom she spoke did not say that the pager belonged to Terry. Trial Tr. at 85. The mere fact that Terry did not own the pager that initially led an officer to discover Terry's identity does not tend to clear Terry from guilt. Instead, such evidence would merely further Attorney Huelskamp's argument at trial that the police investigation was incomplete.

The pager does, however, fit within the definition of "potentially helpful evidence." In *Land,* 802 N.E.2d at 51, the defendant was charged with arson, and asserted as part of his defense that the owner of the house had started the fire for pecuniary gain. The State failed to preserve the third party's shoes, on which a trained dog had detected accelerants, but which had later tested negative for accelerants. We held that this evidence was only potentially helpful because other evidence indicated an accelerant had not been used in the arson, and therefore even if further tests revealed that accelerants were in fact present on the third party's shoes, such results would not exculpate the defendant,

but would have merely "assisted [the defendant] in his defense." *Id.* Similarly, had Terry subjected the pager to further tests, he could have established, at most, that neither he nor anyone connected to him owned the pager. Although this fact would have helped support Terry's defense theory based on the incompleteness of the police investigation, it does not exculpate Terry.

We hold that the pager was potentially helpful evidence, and therefore Terry must demonstrate that the State's failure to preserve it was in bad faith.

### 2. Lack of Bad Faith by the State

In order to show that the State acted in bad faith, it is not enough to show "simply bad judgment or negligence." *Land,* 802 N.E.2d at 51 (quoting *Wade,* 718 N.E.2d at 1166). Instead, a defendant must show that the State failed to preserve the evidence pursuant to a "conscious doing of wrong because of dishonest purpose or moral obliquity." *Id.*

Two days after Terry was convicted, Officer Baldini authorized IPD's property branch to schedule the pager for destruction. The pager was actually destroyed eleven weeks later. Terry argues, "given the size and crucial nature of the exhibit and the inexcusable haste with which [the pager] was disposed, bad faith is the only plausible explanation." Appellant's Br. at 30. However, Terry provides no actual evidence that Officer Baldini or anyone else acted in bad faith. The mere assertion that the circumstances suggest bad faith is not sufficient to establish that the State acted in bad faith. *See Bivins v. State,* 642 N.E.2d 928, 944 (Ind.1994), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996) (rejecting the argument that "police bad faith is established merely by showing a high improbability that the police misplaced evidence in good faith").

Moreover, the circumstances here do not particularly point to bad faith on the part of the State. The pager was destroyed pursuant to IPD procedures, and its movements and destruction were fully documented. Before its destruction, the pager was photographed, a picture of it was included with the other exhibits, and its serial number was recorded. Although the State was aware that Terry was appealing his conviction, Terry has put forth no evidence that Officer Baldini knew that Terry, on appeal or on petition for post-conviction relief, would desire access to the pager in order to determine ownership. Because Terry's reasonably calculated trial defense concentrated on the failure of the police to fully investigate the pager's ownership and was not predicated on the pager's actual ownership, we cannot even say that Officer Baldini should have expected that Terry would want to test the pager after his conviction. *Cf. Land,* 802 N.E.2d at 50 ("The scope of the State's duty to preserve exculpatory evidence is 'limited to evidence that might be expected to play a significant role in the suspect's defense.'" (quoting *Noojin v. State,* 730 N.E.2d 672, 675 (Ind.2000))).

Because Terry has not demonstrated that the State destroyed the pager in bad faith, he has not demonstrated a violation of his due process rights, and the post-conviction court did not err in refusing to grant relief based on the State's destruction of the pager.

### III. Trial Court's Instruction on Reasonable Doubt

Terry argues that the trial court committed reversible error by giving the following instruction on reasonable doubt:

> If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you should find him or her

guilty. If on the other hand, you think there is a real possibility that he or she is not guilty, you should give him or her the benefit of the doubt and find him or her not guilty.

Post Conviction Appendix at 54. However, as Terry concedes in his brief, our supreme court has approved the precise instruction given to the jury in this case. *Williams v. State*, 724 N.E.2d 1093, 1094 (Ind.2000). We are bound by the decisions of our supreme court. *Moore v. State*, 839 N.E.2d 178, 185 n. 4 (Ind.Ct.App.2005), *trans. denied.* Therefore, we hold the trial court properly instructed the jury on reasonable doubt.

## IV. Admission of Identification Evidence

■ Terry argues that the trial court improperly denied Terry's motion to suppress the Officers' pre-trial and in-court identifications. Although Terry originally challenged the admission of the pre-trial and in-court identifications through a motion to suppress, he appeals following a conviction and challenges the admission of such evidence at trial. Therefore, the issue is whether the trial court abused its discretion by admitting evidence of the identifications at trial. *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App. 2003). In making this determination, we will not reweigh the evidence. *Miller v. State*, 846 N.E.2d 1077, 1080 (Ind.Ct.App. 2006), *trans. denied.* Instead, we will consider all conflicting evidence in favor of the trial court's ruling, and only the uncontested evidence favorable to the defendant. *Id.*

### A. Pre–Trial Identification Evidence

Terry argues that the trial court improperly admitted the testimony of the Officers regarding their pre-trial identifications. Specifically, Terry argues that the Officers identified Terry pursuant to an impermissibly suggestive procedure in which the Officers viewed a single photograph to make their identification. We do not decide whether the procedure used by the Officers was impermissibly suggestive because we conclude that any error in the admission of the evidence was harmless.

■ The Due Process Clause of the Fourteenth Amendment requires suppression of testimony regarding a pre-trial identification made pursuant to an impermissibly suggestive procedure. *Hyppolite v. State*, 774 N.E.2d 584, 594 (Ind.Ct.App. 2002), *trans. denied.* However, any error in admitting testimony regarding a pre-trial identification is often harmless if an in-court identification by the same witness is properly admitted. *Wethington v. State*, 560 N.E.2d 496, 503 (Ind.1990).

■ The display of a single photograph of the defendant to a lay witness is impermissibly suggestive. *Dorsey v. State*, 490 N.E.2d 260, 267 (Ind.1986), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 569 (Ind.1995). However, when a police officer who is both an investigator and a witness views a single photograph in order to verify a suspect's identity, the identification procedure is not unduly suggestive. *Miles v. State*, 764 N.E.2d 237, 241 (Ind.Ct.App.2002), *trans. denied.*

In *Miles*, the police officer, along with a confidential informant, met the defendant and purchased narcotics. The officer then returned to the police station and asked to see a picture of the defendant in order to verify his identity. We held that this procedure was not unduly suggestive, finding that the officer acted reasonably in conducting his investigation. *Id.* at 240–41. As in *Miles*, Officer Baldini had seen Terry commit a crime, and after receiving information she reasonably believed to disclose Terry's identity, viewed a picture of Terry to verify his identity. Therefore,

the pre-trial identification of Terry by Officer Baldini was not unduly suggestive.

On the other hand, the question of whether the procedure through which Officers Allen, Slack, and Weaver made their pre-trial identifications of Terry was unduly suggestive is an open question.[9] *Cf. Hyppolite*, 774 N.E.2d at 595 n. 5 (court did not decide issue of whether pre-trial identification made under materially identical circumstances was unduly suggestive because defendant had waived issue). However, we need not address this issue here because we hold, *infra*, that even if the pre-trial identifications were unduly suggestive and therefore should have been suppressed, the trial court properly admitted the in-court identifications of all four Officers. We further hold that on the specific facts of this case, most importantly the strong indicia of reliability surrounding the in-court identifications, any error in the admission of the pre-trial identifications was harmless.

### B. In–Court Identification Evidence

■■■■ "[R]egardless of error in pretrial identification procedures or their suggestiveness if there is sufficient basis for identification independent of the pretrial procedure, there is no error in permitting the in-court identification." *Badelle v. State*, 754 N.E.2d 510, 538 (Ind.Ct.App. 2001), *trans. denied*, (quoting *Filler v. State*, 421 N.E.2d 1146, 1148 (Ind.Ct.App. 1981)). Our supreme court has identified seven factors that are relevant to determining whether a witness has a sufficient independent basis:

[1] the amount of time the witness was in the presence of the perpetrator and the amount of attention the witness had focused on him, [2] the distance between the two and the lighting conditions at the time, [3] the witness's capacity for observation and opportunity to perceive particular characteristics of the perpetrator, [4] the lapse of time between the crime and the subsequent identification, [5] the accuracy of any prior descriptions, [6] the witness's level of certainty at the pre-trial identification and [7] the length of time between the crime and the identification.

*Wethington*, 560 N.E.2d at 503 (citation omitted). "Furthermore, it is well settled that where a witness had an opportunity to observe the perpetrator during the crime, a basis for in-court identification exists, independent of the propriety of pre-trial identification." *Adkins v. State*, 703 N.E.2d 182, 185 (Ind.Ct.App.1998).

■■■ The circumstances surrounding the cocaine sale permitted all Officers to adequately view Terry. This incident occurred at roughly one o'clock in the afternoon on a clear day. Terry was in sight of the Officers for at least a few minutes, and Officers Baldini, Allen, and Slack testified that their primary focus was on Terry during this period. Officer Weaver testified that he watched approximately seventy percent of the transaction between Terry and Officers Allen and Slack. Officers Allen and Slack observed Terry from a distance of five feet or less for at least two minutes while Terry talked to Officers Allen and Slack through the passenger window of the Officers' vehicle. Officers Bal-

---

9. Officer Baldini, who first identified Terry as the person in the photograph, was the officer responsible for investigating Terry's identity. After conducting the investigation and learning Terry's possible identity, Officer Baldini viewed a photograph of Terry to confirm what her investigation had suggested. On the oth-er hand, the other officers had not been involved in the investigation of Terry's identity, and were merely shown a single photograph of Terry, whom Officer Baldini had previously identified as the person who had sold the officers cocaine.

dini and Weaver were parked a block from the spot where Terry sold cocaine to Officers Allen and Slack, but Terry also walked directly past their vehicle, at which point both Officers looked directly at Terry. Finally, all Officers had experience in this type of operation and knew the importance of being able to later identify the perpetrator.

The circumstances relating to the pre-trial identification also support the conclusion that the Officers have a sufficient independent basis for the in-court identification. Officer Baldini viewed the photograph of Terry roughly four hours after the drug sale, and showed Officer Weaver the picture of Terry at the same time she found it. Both Officers "immediately recognized" the man in the photograph as the man from the drug transaction. Trial Tr. at 78. Shortly thereafter, Officer Baldini showed Officer Allen the photograph, still roughly four hours after the incident, and he also "immediately" recognized the man in the photograph as the person who had sold him and Officer Slack the cocaine. *Id.* at 99. Finally, at eight o'clock the following morning, approximately twenty hours after the incident, Officer Baldini showed the photograph to Officer Slack, who also recognized Terry.

In sum, all Officers had ample opportunity to observe Terry during the commission of the crime, and made their pre-trial identifications shortly thereafter with high levels of confidence. We conclude that each Officer had an adequate independent basis to support an in-court identification of Terry. Therefore, the trial court properly admitted the in-court identifications.[10]

*Conclusion*

We affirm Terry's convictions. First, we hold that the post-conviction court did not err in denying Terry's petition for post-conviction relief because Terry received effective assistance of counsel at his trial and his due process rights were not violated by the State's destruction of evidence after Terry's trial. Second, we hold that the trial court properly instructed the jury on the reasonable doubt standard of proof. Third, we hold that the trial court properly admitted the in-court identifications of Terry, and that therefore any error in the admission of testimony relating to the pre-trial identifications was harmless.

Affirmed.

SULLIVAN, J., and BARNES, J., concur.

10. We emphasize, however, that this holding does not endorse the procedure of obtaining pre-trial identifications from police officer witnesses by showing them single photographs. On the particular facts of this case, we did not need to reach the issue because the circumstances surrounding the police officers' observation of Terry during the commission of the crime independently instill confidence in the accuracy of the in-court identifications.