**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

May 08 2013, 8:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL EDWARD GROVES, )
     )
    Appellant-Defendant, )
     )
    vs. ) No. 82A01-1208-CR-386
     )
STATE OF INDIANA, )
     )
    Appellee-Plaintiff. )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Tornatta, Judge
Cause No. 82D02-1012-FA-1247

**May 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Michael Edward Groves ("Groves") was convicted after a jury trial of two counts of dealing in methamphetamine,[1] each as a Class A felony, and was sentenced to an aggregate term of twenty years. He appeals, raising the following restated issue for our review: whether the trial court abused its discretion when it allowed testimony regarding his statement to police to be admitted into evidence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Starting in June 2010, and continuing for approximately one year thereafter, the Evansville Police Department used a particular confidential informant ("the C.I.") to make drug purchases. On August 31, 2010, September 22, 2010, and September 24, 2010, the C.I. arranged to purchase methamphetamine from Groves. Each time, the C.I. notified Detective Chris Goergen of the Evansville Police Department ("Detective Goergen"), and Detective Goergen would meet with the C.I., search him, and affix monitoring devices on him to ensure that each purchase was visually recorded. The C.I. then met with Groves and conducted the transaction.

On August 31, 2010, the C.I. and Groves agreed to meet at Groves's residence located in Vanderburgh County, Indiana, which is within 1,000 feet of a public park, to complete the transaction. After meeting with Detective Goergen, the C.I. proceeded to Groves's residence and exchanged money for methamphetamine. Following the controlled buy, the C.I. handed Detective Goergen two baggies containing a substance that later tested positive for .61 grams of methamphetamine. On September 22, 2010, the

---

[1] *See* Ind. Code § 35-48-4-1.1.

C.I. met Groves for another controlled buy at a bar called the Corner Keg, which is within 1,000 feet of a government subsidized housing complex. After the transaction, the C.I. returned to Detective Goergen with a substance that later tested positive for .42 grams of methamphetamine. On September 24, 2010, the C.I. made a third controlled buy from Groves at the Corner Keg, following which the C.I. gave Detective Goergen a substance that later tested positive for .16 grams of methamphetamine.

In November 2010, before any charges were filed against Groves relating to these controlled buys, he was arrested on an unrelated warrant. Detective Goergen met with Groves and after informing him of his constitutional rights, advised him that the police had evidence of three methamphetamine purchases from Groves and showed him still photos from the first of the videotaped transactions. Groves admitted that he sold methamphetamine to supplement his income. Detective Goergen then offered Groves an opportunity to become a confidential informant. Groves was allowed to leave the police station, but was to call Detective Goergen about working as a confidential informant. Groves called Detective Goergen once, but the detective was thereafter not able to reach him, so Groves did not become a confidential informant.

Because Detective Goergen never heard from Groves about becoming a confidential informant, the State charged Groves with three counts of Class A felony dealing in methamphetamine. Immediately prior to the beginning of the trial, Groves informed the trial court that he anticipated that the State planned to present evidence regarding his admission to Detective Goergen, and Groves objected due to the fact that the recording had not been preserved by the police. The room where Detective Goergen

interviewed Groves was equipped with recording devices. Recordings from the room are recycled automatically after three months if no copy is made. After argument, the trial court ruled that the evidence would be admissible because Groves had been advised of his rights. During trial, Detective Goergen testified as to Groves's admission that he sold methamphetamine. At the conclusion of the trial, the jury found Groves guilty of two counts of Class A felony dealing in methamphetamine but was unable to reach a verdict for the third count. The trial court sentenced him to an aggregate term of twenty years. Groves now appeals.

## DISCUSSION AND DECISION

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012) (citing *Wilson v. State,* 765 N.E.2d 1265, 1272 (Ind. 2002)). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* (citing *Smith v. State,* 754 N.E.2d 502, 504 (Ind. 2001)). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Combs v. State*, 895 N.E.2d 1252, 1255 (Ind. Ct. App. 2008), *trans. denied*. Error is harmless if it does not affect the substantial rights of the defendant. *Id.* at 1258.

Groves argues that the trial court abused its discretion when it allowed Detective Goergen to testify as to statements made by Groves in his interview with the detective. Groves contends that this testimony should not have been allowed into evidence because the original recording of his interrogation was destroyed by Detective Goergen and such

4

destruction of evidence violated Groves's right to due process. Groves asserts that the failure of the police to preserve this potentially useful evidence was done in bad faith, therefore, violating his right to due process, and the evidence should not have been admitted into evidence. Groves further claims that the admission of such evidence was not harmless because the other evidence presented was "not overwhelming enough to overcome the influential and prejudicial nature of [his] alleged admission" of dealing methamphetamine, and his conviction should be reversed. *Appellant's Br*. at 16.

Initially, the State argues that Groves has waived his argument because he failed to raise a contemporaneous objection to the admission of his statement to the police at trial. A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010); *Jackson v. State,* 735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal."); *Wagner v. State,* 474 N.E.2d 476, 484 (Ind. 1985) ("When a motion to suppress has been overruled and the evidence sought to be suppressed is later offered at trial, no error will be preserved unless there is an objection at that time."). The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. *Jackson,* 735 N.E.2d at 1152.

Here, prior to trial, Groves made a motion to suppress his statement to the police, which was denied by the trial court. During the trial, Grove objected when Detective Goergen began to testify regarding the interview he conducted of Groves and

incorporated the objection made prior to trial. *Tr*. at 266-67. The trial court overruled Groves's objection, and the detective continued to testify about the interview with Groves including the admission by Groves that he did deal small amounts of methamphetamine to supplement his income. *Id*. at 270. Although Groves did not make a contemporaneous objection with the testimony concerning this admission, he did pose an objection to the entire line of questioning regarding the interview conducted by Detective Goergen and incorporated his arguments from before the trial that the recording of the interview had been negligently destroyed. Therefore, assuming without deciding that Groves's objection during the trial was sufficient to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors, we will decide this issue on its merits and not find it to be waived.

When determining whether a defendant's due process rights were violated by the State's failure to preserve evidence, we must first determine whether the evidence was "potentially useful evidence" or "materially exculpatory evidence." *Terry v. State*, 857 N.E.2d 396, 406 (Ind. Ct. App. 2006) (citing *Blanchard v. State,* 802 N.E.2d 14, 26 (Ind. Ct. App. 2004) (citing *Arizona v. Youngblood,* 488 U.S. 51, 57 (1988))), *trans. denied.* Evidence is "materially exculpatory" if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (citations omitted). Evidence is exculpatory if it is "'[c]learing or tending to clear from alleged fault or guilt; excusing.'" *Land v. State,* 802 N.E.2d 45, 49 (Ind. Ct. App. 2004) (quoting *Wade v. State,* 718 N.E.2d 1162, 1166 (Ind. Ct. App. 1999), *trans.*

6

*denied*), *trans. denied*. When the State fails to preserve materially exculpatory evidence, a due process violation occurs regardless of whether the State acted in bad faith. *Terry,* 857 N.E.2d at 406. On the other hand, evidence is merely "potentially useful" if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* (quoting *Youngblood,* 488 U.S. at 57). When the State fails to preserve potentially useful evidence, a due process violation occurs only if the defendant shows the State acted in bad faith. *Id.*

In the present case, Groves does not claim that the evidence at issue was materially exculpatory evidence, but merely potentially useful evidence. Therefore, he must establish that the State acted in bad faith when it failed to preserve the evidence. Bad faith is defined as being "not simply bad judgment or negligence, but rather implies the conscious doing of wrong because of dishonest purpose or moral obliquity." *Land*, 802 N.E.2d at 49; *Wade,* 718 N.E.2d at 1166. The evidence showed that the police had three video recordings of Groves delivering methamphetamine to the C.I., who could testify to the transactions. Groves had entered into negotiations with the police to make drug purchases for them. Based on this information, Detective Goergen testified that, after he conducted the interview with Groves, he believed that Groves was going to begin working for the police as a confidential informant, which would make the preservation of the recording unnecessary. *Tr.* at 271. However, Groves never returned contact with Detective Goergen and never became a confidential informant. The mere fact that the detective's belief proved to be wrong about Groves's interest in working for the police does not mean he acted in bad faith when he failed to preserve the recording. Groves has

7

failed to show a dishonest purpose or immoral intent by Detective Goergen and therefore failed to establish bad faith as required for a due process violation. Because Groves failed to show either that the evidence at issue was materially exculpatory or that the failure to preserve it was done in bad faith, we conclude that the trial court did not abuse its discretion when it allowed Detective Goergen to testify as to statements made by Groves during his interview, including his admission that he dealt small amounts of methamphetamine to supplement his income.

Affirmed.

VAIDIK, J., and PYLE, J., concur.