## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 27 2018, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michelle F. Kraus
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hozyfa H. Sultan,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 27, 2018<br><br>Court of Appeals Case No.<br>02A05-1705-CR-1207<br><br>Appeal from the<br>Allen Superior Court<br><br>The Honorable<br>John F. Surbeck, Jr., Judge<br><br>Trial Court Cause No.<br>02D06-1511-MR-9 |

**Kirsch, Judge.**

[1] Hozyfa H. Sultan ("Sultan") was convicted of murder,[1] a felony, attempted murder,[2] a Level 1 felony, and an enhancement for the use of a firearm.[3] He appeals his convictions, raising the following restated issue: whether the trial court abused its discretion when it denied Sultan's motion to dismiss, which he requested as a sanction for an alleged discovery violation.

[2] We affirm.

## Facts and Procedural History

[3] On October 22, 2015, Sultan went to the home of Brandon Washington ("Washington"), where he met Washington and his friend, Mikal Montgomery ("Montgomery"). Sultan spoke with the two briefly and then showed them a handgun and asked Washington, who had expressed interest in buying a gun from Sultan, if that gun would work. *Trial Tr. Vol. I* at 51. Washington told Sultan that it would work. *Id.* at 52. Sultan next asked if either Washington or Montgomery had a gun, and they responded that they did not. *Id.* At that point, Sultan started shooting at Washington. Washington was struck by three bullets, each of which could have been fatal on its own, and fell to the ground in the living room, where he ultimately died from his wounds.

---

[1] *See* Ind. Code § 35-42-1-1.

[2] *See* Ind. Code §§ 35-42-1-1, 35-41-5-1(a).

[3] *See* Ind. Code § 35-50-2-11.

[4] Sultan continued to shoot, and as Montgomery attempted to run away, he was struck several times as well. Ultimately, Montgomery managed to reach the bathroom and was able to shut himself inside. Sultan fled out the front door of the house. When he could hear no more shots, Montgomery came out of the bathroom and briefly spoke to Washington, who was still alive at that point. Montgomery then ran out the back door of the house and to a nearby home to get help.

[5] Soon after the shooting was reported to 911, Fort Wayne Police Department Officer Matthew Foote ("Officer Foote") arrived at the scene and went to speak with Montgomery and assess his condition. Officer Foote requested help for Montgomery and attempted to ascertain what had happened. At that time, Montgomery told Officer Foote that he did not know who shot him. *Id*. at 59-61, 131-32. This conversation was recorded by the system in Officer Foote's patrol car. Montgomery survived his injuries, and a few days later, he told the police that he had always known who shot him and identified Sultan as the shooter. *Id*. at 61-62, 67-68; *Appellant's App. Vol. II* at 22.

[6] The State charged Sultan with murder, attempted murder, as a Level 1 felony, and an enhancement for the use of a firearm during the commission of a felony. The probable cause affidavit, filed on November 6, 2015, stated that when police spoke with Montgomery at the hospital following the shooting on October 23, he initially told police that he did not know who shot him and described the shooter only as a black male. *Appellant's App. Vol. II* at 22. The affidavit also stated that when police interviewed him again six days later on

October 29, Montgomery admitted that he had always known that Sultan was the person who shot him and Washington. *Id*.

[7] The recording of Officer Foote's conversation with Montgomery at the scene was not discovered by prosecutors or given to Sultan until March 2017, days before the then-scheduled trial. This was because in October 2015, at the time the crime occurred, the Fort Wayne Police Department used a system of marking the recordings made on their patrol car systems that associated the recording with a specific case or marked it as irrelevant. *March 13 Tr.* at 19-21. Officer Foote mistakenly marked footage of him driving around with the control number associated with this investigation and marked the recording of his conversation with Montgomery as irrelevant, and the two videos should have been marked in reverse. *Id*. Because of this mistake, the recording of the interview with Montgomery was not associated with the investigation and was not discovered by the State until they were preparing Officer Foote for trial. During this preparation, Officer Foote reviewed the videos from his vehicle system and expressed skepticism that his conversation with Montgomery had not been recorded. He engaged in further investigation and located the missing video. The State immediately disclosed the video to Sultan and searched to locate any other videos associated with the case that may have been overlooked to provide to Sultan.

[8] After Sultan received the late discovery of Officer Foote's video, he filed a motion to dismiss the charges or for alternate sanctions against the State. A hearing on the motion to dismiss was held, and at the hearing, the trial court

and the parties openly acknowledged ongoing struggles in Allen County with discovery problems. The State explained in detail the many efforts undertaken by the prosecutor and police in the county to correct these issues. The State explained that, among other changes instituted, the police department had stopped using the labelling system that led to Officer Foote's recorded conversation with Montgomery not being associated with Sultan's investigation in the police database. *Id.* at 20.

[9]  At the hearing, Sultan acknowledged that the State had not acted in bad faith and had promptly provided the information when it became aware of it and worked to discover additional possible oversights. *Id.* at 22-23. The trial court also found that there was no misconduct or bad faith on the part of the State that contributed to the discovery delays in the case. *Id.* at 25, 29. The trial court further noted that everyone was acting diligently and recognized the ongoing efforts being made by the prosecutor, the police, and others to correct the flaws in the systems used to store and organize information, including the voluminous videos recorded by the police department on a daily basis. *Id.* at 29-34. The trial court stated, "I think in the long run just the continued diligence of everyone involved is the appropriate sanction cause everybody is gonna [sic] be working harder." *Id.* at 35. The trial court denied Sultan's motion to dismiss the charges against him and, instead, ordered a continuance of the trial to allow Sultan time to further evaluate the newly discovered information. *Id.* The trial was continued to March 27, 2017. At the conclusion of the three-day jury trial, Sultan was found guilty as charged. On May 1, 2017,

the trial court sentenced him to an aggregate sentence of 110 years executed. Sultan now appeals.

## Discussion and Decision

[10]    "Trial courts have broad discretion in dealing with discovery violations by the State in the alleged late disclosure of evidence to the defense." *Alcantar v. State*, 70 N.E.3d 353, 356 (Ind. Ct. App. 2016). "Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated." *State v. Schmitt*, 915 N.E.2d 520, 522 (Ind. Ct. App. 2009) (quoting *Lindsey v. State*, 877 N.E.2d 190, 195 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*. The trial court will be granted deference in assessing what constitutes substantial compliance with discovery orders. *Id.* We may reverse a trial court's determination only for an abuse of discretion involving clear error and resulting prejudice. *Alcantar*, 70 N.E.3d at 356.

[11]    A continuance is usually the proper remedy if a remedial measure is warranted. *Schmitt*, 915 N.E.2d at 523. However, if the State's actions were deliberate and the conduct prevented a fair trial, a more extreme remedial measure, such as the exclusion of evidence, may be employed. *Id.* "Dismissal of charges is also a sanction within the arsenal of the trial judge in dealing with the failure of the State to afford the defense access to evidentiary materials as ordered." *Id.* (citing *Robinson v. State*, 450 N.E.2d 51, 52 (Ind. 1983)). In determining

whether dismissal was proper, the court should consider whether the breach was intentional or in bad faith and whether substantial prejudice resulted. *Id.*

[12] Sultan contends that the trial court abused its discretion when it denied his motion to dismiss the charges against him. Specifically, he asserts that the trial court should have dismissed the charges because the State committed a "grave discovery violation that resulted in the violation of [his] due process rights; violated his Sixth Amendment Right to effective assistance of counsel; and created substantial prejudice to him." *Appellant's Br*. at 11. Sultan claims that the State's late discovery of the in-car video of Officer Foote speaking with Montgomery was a violation of the discovery order and that there was "an ongoing, systematic flaw in the way discovery [was] handled in criminal cases in Allen County." *Id*. at 16. He also argues that the discovery violation was prejudicial to him and violated his right to effective assistance of counsel because the late discovery of the video made it impossible for his attorney to review the evidence prior to the hearing on the motion to dismiss. Sultan maintains that the trial court erred in denying his motion to dismiss because the State committed a serious discovery violation and "continued to exhibit the same pattern of discovery violations." *Id*. at 19.

[13] Sultan challenges the late discovery of Officer Foote's recorded conversation with Montgomery at the crime scene in which Montgomery claimed that he did not know who shot him. The video was discovered by Officer Foote after his pretrial preparation with the State when he expressed skepticism that there was not a video of his interaction with Montgomery. It is undisputed that the State

was not aware of the video prior to Officer Foote's discovery of it, and it is also undisputed that the State acted promptly to obtain the video and provide it to Sultan. Sultan received this video immediately after the State first discovered it, which was on March 10, 2017, a few days before the then-scheduled trial date in early March 2017. During the hearing on the motion to dismiss, Sultan acknowledged, and the trial court found, that there had been no misconduct or bad faith on the part of the State in this case. *March 13 Tr*. at 22-23, 25, 29. In light of the lack of misconduct or bad faith, the trial court found that dismissing the charges against Sultan was not an appropriate sanction, and instead, concluded that the discovery violation could be remedied by continuing trial to allow Sultan additional time to review the new evidence. *Id*. at 35-36.

[14] The trial court was in the best position to "determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated." *Schmitt*, 915 N.E.2d at 522. The trial court's decision recognized that there was no misconduct and that the State did not act in bad faith, and it provided Sultan sufficient time in which to review the newly discovered information and prepare for trial. The trial court's determination was reasonable in light of the fact that the newly-discovered video did not actually provide significant new information because Sultan was aware from the beginning of the case that Montgomery initially refused to identify him as the shooter to police and told the police he did not know who the shooter was, given that this information was contained in the probable cause affidavit. *Appellant's App. Vol. II* at 22.

[15]     Despite the fact that Sultan asserts that the discovery violation was prejudicial to him, he does not actually contend that the continuance was insufficient to allow him time to review the evidence and to prepare for trial. Nor does he claim that any actual prejudice to his rights at trial resulted from the trial court's decision to allow a continuance. Instead, Sultan maintains that the trial court's determination was not an adequate remedy in light of the State's discovery violation in the present case, and in light of other ongoing discovery issues in Allen County. Although more extreme sanctions exist for a discovery violation, such sanctions are only appropriate if a defendant establishes "'that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial.'" *Cain v. State*, 955 N.E.2d 714, 718 (Ind. 2011) (quoting *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000)). In fact, a defendant bears an even heavier burden when he seeks the extreme sanction of dismissal of the charges against him. *Terry v. State*, 857 N.E.2d 396, 404 (Ind. Ct. App. 2006), *trans. denied*.

[16]     Here, there is no contention that the State's actions were deliberate or that its conduct prevented Sultan from receiving a fair trial. Although there was acknowledgment during the hearing on the motion to dismiss of past discovery problems in Allen County, the State discussed, and the trial court recognized, that the prosecutor's office and the county's police agencies had been working diligently since they became aware of the problems to change the procedures that led to some of the discovery problems experienced. *March 13 Tr.* at 17, 25-35.

[17] We conclude that the trial court did not err in its determination to deny Sultan's motion to dismiss. Nothing in the record indicated that the State acted deliberately in not discovering and providing the video to Sultan; in fact, as soon as the State learned of the video's existence, it promptly provided Sultan with the evidence. Further, Sultan has not shown how the State's conduct prevented him from receiving a fair trial or how the continuance was not an adequate remedy for the discovery violation. We, therefore, find that the trial court did not abuse its discretion when it denied Sultan's motion to dismiss.

[18] Affirmed.

[19] Bailey, J., and Pyle, J., concur.